Major General Don. C. Morrow Adjutant General Military Department of Arkansas Camp Joseph T. Robinson North Little Rock, AR 72199-9600
Dear General Morrow:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 One of my soldiers was ordered to active military duty pursuant to Title 32, United States Code, Section 502(f). His duty is to train combat soldiers. I consider his duty emergency in nature due to the current threat facing our nation. In civilian life he is a deputy sheriff. My understanding is that the Sheriff certified his payroll for 30 days pay for emergency military leave, but that the County Judge declined to pay this amount. The County Judge did certify fifteen days of leave for payment.
This situation has prompted you to pose a question I will paraphrase as follows:
 Is the reserve military officer described in this request entitled to 30 days of paid emergency military leave when ordered to active duty pursuant to 32 U.S.C. § 502(f)?
RESPONSE
Only a finder of fact can definitively answer this question. Pursuant to A.C.A. § 21-4-102, the reserve military officer will be entitled to 30 working days of paid emergency leave only if he is called to active duty in response to an "emergency situation" as defined at A.C.A. §21-4-212(e). Although I believe directly responding to the situation in Iraq would probably qualify as an "emergency," I am unaware of the precise circumstances that prompted his call to active duty. If the situation that prompted his activation does not qualify as an "emergency," he may qualify for paid training leave pursuant to A.C.A. §21-4-102(a). The amount of paid leave time available to him under such circumstances will depend on the amount of paid leave time he has already drawn.
Subsection 502(f) of title 32 of the United States Code provides that a member of the National Guard, subject to certain conditions, may be ordered to perform duties in addition to the routine required drills and field exercises described elsewhere in section 502. The statute at no point mandates that such additional duties be imposed only in response to emergency situations.
Among the state statutes you report your staff considers germane to your request is A.C.A. § 21-4-203, which is contained within the Uniform Attendance and Leave Policy Act, A.C.A. § 21-4-201 et seq. (Repl. 1996 Supp. 2001). Section 21-4-201 of the Code provides:
 It is the purpose and intent of this subchapter to establish a uniform attendance and leave policy for all affected state employees of agencies, boards, and commissions covered by the provisions of this subchapter.
(Emphasis added.) As the highlighted language in this passage suggests, the Uniform Attendance and Leave Policy Act applies only to state employees, not to a county deputy sheriff.
In my opinion, the applicable statute is A.C.A. § 21-4-102 (Repl. 1996), which covers not only employees "of the state," but also "of any of its political subdivisions." A.C.A. § 21-4-102(a)(1). Section 21-4-101
provides in pertinent part:
 (a) All employees of the state, as defined in § 21-4-203, or any of its political subdivisions who desire to take a leave of absence for the purpose of participating in the military training programs made available by the National Guard or any of the reserve branches of the armed forces and all state employees who are members of the Reserve Corps of the Public Health Service who desire to take a leave of absence for the purpose of participating in the civil defense and public health training programs made available by the United States Public Health Service shall be entitled to such a leave of absence for a period of fifteen (15) days plus necessary travel time for annual training requirements or other duties performed in an official duty status in any one (1) calendar year. To the extent this leave is not used in a calendar year, it will accumulate for use in the succeeding calendar year until it totals fifteen (15) days at the beginning of the calendar year.
 (b)(1) Whenever any employee is granted a leave of absence under the provisions of this section, he shall be entitled to his regular salary during the time he is away from his duties during such leave of absence.
 (2) Such leave of absence shall be in addition to the regular vacation time allowed to the employee.
 (c)(1) Employees called to duty in emergency situations by the Governor or by the President shall be granted leave with pay not to exceed thirty (30) working days after which leave without pay will be granted. This leave shall be granted in addition to all other leave the employee shall be entitled to.
 (2) "Emergency situations" shall have the same meaning as it is defined in § 21-4-212.
* * *
 (e) Whenever any employee of a political subdivision is granted military leave for a period of fifteen (15) days per calendar year or fiscal year, under the provisions of this section, the military leave will accumulate for use in succeeding calendar years or fiscal years until it totals fifteen (15) days at the beginning of the calendar year or fiscal year, for a maximum number of military leave days available in any one (1) calendar year or fiscal year to be thirty (30) days.
Subsection 21-4-212(e) defines the term "emergency situations" as follows:
 "Emergency situations" means any case of invasion, disaster, insurrection, riot, breach of peace, or imminent danger thereof, threats to the public health or security, or threats to the maintenance of law and order.
Subsection (a) of this statute affords employees of the state and its political subdivision 15 days of paid leave for participation in militarytraining exercises. With respect to the employees of political subdivisions, subsection (e) of the statute allows the employee to aggregate accrued leave time over two years, thus potentially authorizing 30 days of leave for training in any given year if the employee took no paid leave for training in the preceding year. As you acknowledge in your request, subsection (c) of the above statute further authorizes up to 30 days of paid leave for military service when an employee is called up in an "emergency situation."[1]
Determining which of the formulas just recited will apply under the circumstances described in your request will entail conducting a factual inquiry of the sort I am neither equipped nor authorized to undertake. According to your report, the employee was called to active duty for the express purpose of "participating in . . . military training programs" — an assignment that suggests that the leave restrictions set forth in A.C.A. § 21-4-102(a) might apply. If so, assuming the employee did not have accrued leave from last year that he might carry over to his current service, one might argue that he was only entitled to 15 days of paid leave, as the county judge apparently believes. However, even assuming subsection (a) of the statute applies, I have no idea whether the employee is entitled to any accumulation of paid leave time from the current year into next year.
Moreover, as you suggest in your request, the circumstances giving rise to the employee's call to active duty may be such that his service qualifies as being rendered in response to an "emergency situation." Assuming the employee were activated directly in response to the situation in Iraq, I believe the "emergency situations" condition might indeed apply, since an imminent threat of war would clearly appear to fall within the category of "threats to the public health or security." A.C.A. § 21-4-212(e). In this case, the employee would be entitled to paid leave up to thirty days regardless of whether he had already collected his full quota of paid leave for regular annual training — a conclusion I base on the statutory directive that paid emergency leave "be granted in addition to all other leave the employee shall be entitled to." A.C.A. § 21-4-102(c)(1).
I feel obliged to comment in passing on the qualifying language "up to thirty days" in my previous sentence. The statute provides that a National Guard member activated in response to an emergency situation "shall be granted leave with pay not to exceed thirty (30) working days."Id. (emphasis added). In my opinion, common sense dictates reading this statute to mean that all emergency leave will be with pay up to a period of thirty working days; it should not be read as vesting local officials with discretion to decide whether or not to pay an employee for the full thirty days if his tour of emergency duty equals or exceeds this term. With respect to your specific question, then, assuming the circumstances support the conclusion that the affected employee's active duty is in response to an "emergency situation," and further assuming that his emergency service will extend for at least thirty working days, I believe the county judge will be obligated to authorize paid leave for a full thirty working days. However, as noted above, I am not situated to determine whether these conditions apply. This factual determination should be made by you in consultation with the county judge and perhaps the county attorney.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
J. LEON JOHNSON Attorney General
JLJ:JD/cyh
[1] Although you have not directly raised the issue in your request, I will note that the statute makes no provision for paid leave for military service in non-emergency situations that does not involve training. In my opinion, the legislature did not intend to provide paid leave under such circumstances. Compare Ark. Op. Att'y Gen. No. 90-330 (opining that with respect to teachers and state agency employees, "`military training programs' are distinguishable from [non-emergency] active duty for purposes of obtaining leave without loss of pay").